**GREENE COUNTY.**

October and November Term, 1884, No. 21.    October 6, 1884.

## Hughes *v.* Smith *et al.*

</div>

1. In an action of ejectment, plaintiff showed title by patent and successive conveyances to a tract of land containing 400 acres, called "Wolf Den," and claimed that the 25 acres of land in dispute were covered by said patent and conveyances.    The "ironwood" at the north-west corner, and the "white oak" at the south-west corner, called for in said patent, had disappeared ; and plaintiff claimed that

[Hughes v. Smith et al.]

the " white oak " had been replaced by a " haw bush " then standing 36 rods west of the point where defendants claim that the " white oak " formerly stood. Defendants offered to prove that the father of the plaintiff was the real purchaser of Wolf Den, although plaintiff's name was used in the articles of agreement as the purchaser, and that the father treated and regarded the corner claimed by defendants as the true south-west corner of the Wolf Den tract.

Held, that this was not an offer to alter or contradict the written articles, nor to set up a parol title to land against the owner of the paper title; and that the father being the real owner, his declarations and acts against his interest during the continuance of his title were competent evidence.

2. Evidence that tended, of itself or in connection with other evidence, to illustrate the true location of the disputed line in any degree was admissible, and its efficacy for that purpose was a question solely for the jury.

3. In the absence of a bill of exceptions showing that objection was made to the competency of a witness, such objection cannot be assumed.

4. Plaintiff offered to prove that his father, being the owner of the land adjoining Wolf Den on the south, and the owner of the land immediately south of defendants' land agreed, by way of compromise, to the white oak corner claimed by defendants as the corner of their respective lands, for the purpose of showing that it was not the patent corner, but only a corner agreed upon, and that plaintiff's father at all times claimed the " haw bush " as the patent corner. Held, that as the evidence could not disprove or tend to disprove the fact that the white oak was the patent corner, it was irrelevant, and that declarations by the owner in favor of his own title were inadmissible.

5. When a person is alive, present in court, and examined as a witness at the trial, it is not competent to give his declarations in evidence.

6. If there is evidence of living witnesses who saw the marks of boundaries before their destruction, or if there are other conditions on the ground which are entirely inconsistent with the correctness of the courses and distances mentioned in a patent, such evidence is of superior weight, and will prevail over the patent courses and distances.

7. Where plaintiff's point for charge stated that if " James Staggers, under whom the defendants claim, pointed out the eastern boundary of his land at or west of the line claimed by plaintiff to be the western line of Wolf Den," his possession was not adverse under the statute of limitations, but did not state that the act occurred while the statute of limitations was running, it lacks a vital element of abstract truth as a legal proposition, which would make its naked affirmance improper.

8. Where plaintiff's point for charge stated that the entry of a stranger upon the land before the expiration of twenty-one years, declaring that he was authorized by plaintiff to seed the land in dispute, and who challenged the right of defendants to seed the land, was such an entry as would toll the running of the statute of limitations, but did not aver the truth of the declaration that he was so authorized, Held, that plaintiff was not entitled to an affirmance of the point.

Before MERCUR, C. J.; GORDON, PAXSON, TRUNKEY, STERRETT, GREEN, and CLARK, JJ.

Error to the Court of Common Pleas of Greene County.
Ejectment by Thomas Hughes against Robert Smith,

guardian of James Staggers and Sarah Anne Staggers, now intermarried with Leroy Johnson, and Leroy Johnson, her husband, and Melvin C. Hull, tenant in possession, for a lot or piece of ground in Jackson township, containing 25 acres, more or less.

Upon the trial in the court below, before WILLSON, J., the following facts appeared:

On the 6th day of January, 1787, a patent was issued by the Commonwealth of Pennsylvania to Robert Morris for a tract of land called "Wolf Den," in the county of Washington, containing four hundred acres and allowance. And on the 30th day of March, 1795, Robert Morris conveyed, *inter alia*, "Wolf Den," to Edward Tilghman. The title to "Wolf Den," *inter alia*, by regular and successive conveyances, commencing with the said Edward Tilghman, became vested in Ellen A. Cook.

On the 3d October, 1851, Thomas Hughes, the plaintiff, purchased from Ellen A. Cook "Wolf Den" and "Wolf Path," an adjoining tract on the east, for which a deed was duly executed and delivered on the 1st December, 1876, the contract having been proven in the orphans' court after the death of Ellen A. Cook. The plaintiff gave evidence to show that the land in dispute was covered by said patent and conveyances.

The defendants gave evidence to show that one Henry F. Moore, in or about the year 1840, made a settlement and improvement on a tract of land including the land in dispute, and that on the 28th of December, 1850, the said Henry F. Moore obtained a patent from the Commonwealth for the same; that the said Henry F. Moore conveyed the land to Abraham Staggers, who conveyed the same to James Staggers; that James Staggers died intestate, leaving two children, the said Sarah Ann and James, the present claimants of the land. The defendants claimed title to the land in dispute in two ways: First, under the patent of Henry F. Moore, and second, by adverse possession for more than twenty-one years.

The "Cooke lands," in Greene county, of which Wolf Den is a part, which were patented in 1787, contain over forty-nine thousand acres. Wolf Den is one of a tier of nine tracts, and the fourth in the tier, numbering from the north, and the fifth, numbering from the south. Sugar Loaf adjoins Wolf Den on the north, and Johns' Bottom adjoins it on the south, Wolf Path adjoins Wolf Den on the east, and lands owned by the defendant adjoin Wolf Den on the west, as shown by the following plan:

New a well
set stone.

W.O.

B.O.

"Bee Tree"

B.O.

Ash | Maple

"Macks Camp"

R.O.

W.O. | Sugar | Line tree

"Sugar Loaf"

W.O.

Gum.

Chestnut | Ironwood

Beech | Beech | Post | W.O. | R.O. | C.O. | Hickory

Post | Post

Curts through fields.

Staggers heirs
Patented to
Henry F. Moor
D. Dec. 27, 1859.

"Wolf Den"

W.O.

Poplar | W.O. (McQuay)

"White Thorn" | "Johns Bottom"

Poplar

Hickory | Poplar claimed by Hughs | Poplar | Line tree

"Drayton" | "Shipton"

B.O.

B.O. | Maple

"Zuallo" | "Hempfield"

Maple

Maple | Gum

"Thorn" | "Nettle Hill"

Sarvice | W.O.

W.O.

SCALE 240 RODS
TO THE INCH

N →

[Hughes *v.* Smith *et al.*]

The "ironwood" corner called for in the patent for Wolf Den at the north-west corner is gone, and the "white oak" corner called for in said patent at the south-west corner is gone. The land in dispute begins at the white oak corner of Wolf Den, and includes a strip running north one hundred and thirty-one perches, and thirty-six perches wide, and contains twenty-five acres.

Defendants' witnesses testified that the location of the ironwood and white oak corners was at the points indicated in the above plan. Plaintiff's witnesses testified that the true line of Wolf Den was thirty-six rods west of the line running from the ironwood corner to the white oak corner, as shown on the plan.

Defendants offered to prove that James Hughes, the father of the present plaintiff, was the real purchaser from Mrs. Cooke of the Wolf Den and Wolf Path tracts, although the plaintiff's name was used in the article of agreement as the purchaser; that the said James Hughes sold the Wolf Den tract to parties who afterwards sold and conveyed for a full consideration to the plaintiff, through whom he now holds the land, and that the said James Hughes, while owner of the said tract of land, treated and regarded the corner to which the defendant now claims as the real south-west corner of said Wolf Den tract.

Plaintiff objected to the evidence offered as incompetent and irrelevant, and further, that it is in contradiction of the article of agreement in writing between Alfred Howell, attorney in fact for Elenor A. Cooke, and Thomas Hughes, the plaintiff; and further, because the defendants are defending upon a title not derived from Elenor A. Cooke.

Objection overruled and exception sealed.

(First assignment of error.)

Defendants offered in evidence an article of agreement between James Hughes, the father of the plaintiff, and John Morris, dated April 1, 1856, for the sale by the former to the latter for a portion of land containing about two hundred acres; being the south part of "Wolf's Den." This to be followed by a deed from the executors of James Hughes to John Morris, executed in pursuance of a power contained in the will of the said James Hughes, authorizing his executors to carry into execution all his contracts, in which deed the property is described as bounded on the west by lands of the heirs of James Staggers, deceased, and in which deed the line to which the defendant now claims is treated as the western boundary

[Hughes *v.* Smith *et al.*]

of the land conveyed; and to be further followed by evidence showing title at the present time in Thomas Hughes, the plaintiff. This for the purpose of showing that the plaintiff has recognized the boundary to which the defendants now claim as the boundary of the Staggers land.

Plaintiff objects that the evidence offered is incompetent and irrelevant.

Objection overruled and exception sealed.

(Second assignment of error.)

Abraham Staggers, the grantor of the land in dispute, was called by defendants and was permitted to testify:

(Third assignment of error.)

Plaintiff offered to prove by John C. Flennecker, who was a joint owner with others of "White Thorn," that the witness and James Hughes, Sr., who was the owner of "John's Bottom," agreed, in order to settle a contest between themselves, that the north-east corner, or "White Thorn," and the north-west corner of "John's Bottom" should be fixed at the white oak, as claimed by the defendants. This for the purpose of showing that the corner is not an original patent corner, but is one agreed on between James Hughes, Sr., and the witness.

Defendants objected to the evidence offered, for the reason that any compromise between the witness and James Hughes, fixing the corner of "White Thorn" and "John's Bottom" can, in no way, effect the ascertaining of the corner now in dispute; and for the further reason that the offer, so far as it is intended to locate the corner in dispute, would be merely evidence of acts or declarations done by James Hughes in furtherance of his own interests, and, therefore, incompetent, said James Hughes being the owner of the "Wolf Den" tract.

Objection sustained and exception sealed.

(Fourth assignment of error.)

Plaintiff offered to prove, in connection with the former offer, and in reply to the evidence of defendants, that James Hughes controlled "Wolf Den," and sold it to parties recognizing the lines as claimed to by the defendants as the western boundary of "Wolf Den;" and that James Hughes, in the contest with the witness, and at all times, claimed the white oak, at the thorn bush, as the south-west corner of "Wolf Den," which gives the land in dispute to the plaintiff.

Defendants objected to the introduction of the evidence offered, for the reason that James Hughes being the owner of the "Wolf Den" tract, any declarations made by him to the effect that the western line of the said tract was

[Hughes v. Smith et al.]

where it is now located by the plaintiff, would be made in furtherance of his interest, and, therefore, incompetent.

Objection sustained and exception sealed.

(Fifth assignment of error.)

Plaintiff offered to prove that, in making the survey, Mr. Bayard, who was the owner of "Wolf Path," pointed out where the north-eastern corner of the tract was, and that he claimed that to be the eastern boundary of "Wolf Path.". To be followed by evidence of the tracing of the line from there to the western boundary of "Wolf Path," and thence by the western boundary of "Wolf Den," and thence south to the poplar. This to be followed by the evidence of the surveyor that he found that to correspond with the marks on the ground, and the poplar to be the true corner.

Defendants objected to the evidence offered, for the reason that there is no evidence that Samuel P. Bayard, the person named in the offer, was the owner of "Wolf Path" tract, the evidence introduced showing that he was the owner merely of a part of it. And second, that there is no offer to prove that the statement alleged to have been made by the said Bayard was made in the presence of the defendant, or the persons through whom they claim, or that it was communicated to them. That the declaration of Samuel P. Bayard, not being a surveyor, and being still living and here in court, would not be competent against the defendants to fix the boundary.

Objection sustained and exception sealed.

(Sixth assignment of error.)

Plaintiff offered to show how far the Philip Friend land extended on the northern line of "John's Bottom," for the purpose of showing the bearing of "John's Bottom" from the poplar—the course from which it was run.

Defendants objected that the evidence offered is irrelevant for the purpose for which it was offered.

Objections sustained and exception sealed.

(Seventh assignment of error.)

Plaintiff submitted points for charge which, with the answers thereto, are as follows:

*First.* That if the jury believe, from the evidence, that the poplar is the original patent corner of "John's Botton" and "White Thorn" and that the white oak corner called for in the patent for "Wolf Den," at the south-west corner of said "Wolf Den," and the north-west corner of "John's Bottom," and the south-east corner of "White Thorn," is now gone, and there are now no orig-

inal marks on the ground to show where said white oak
corner stood, that the said white oak corner of "Wolf Den"
must be located where the patent courses and distances
call for and run out, and if the corner, as claimed by the
plaintiff near the haw bush, as the said white oak corner,
best satisfies the courses and distances called for in the
patents for "John's Bottom," "White Thorn," and
"Wolf Den," the said corner, as claimed by the plain-
tiff, must be deemed and taken to be the place of the
original patent corner, and the western boundary of said
"Wolf Den" tract must be located from said corner by
running the courses and distances called for in said pat-
ent for "Wolf Den."

Answer—refused.

(Eighth assignment of error.)

*Second.* If the jury believe, from the evidence, that
the "ironwood," called for in the patent for "Wolf Den,"
as the north-west corner of said "Wolf Den," is now
gone, and that there are no marks now on the ground to
show where the said "ironwood" stood, the said iron-
wood corner must be located where the patent courses and
distances called for and run out, and if, in running from
said "white oak" corner, as claimed by plaintiff, the
courses and distances called for in the patent for "Wolf
Den," to the call for the "ironwood," locates the western
line of "Wolf Den," as claimed by the plaintiff, the land
in dispute is covered by the patent for said "Wolf Den"
tract.

Answer—refused.

(Ninth assignment of error.)

*Third.* As the defendants claim title under the warrant
and survey to Henry F. Moore, dated the 6th of December,
1850, if the jury believe, from the evidence, that James
Staggers, under whom the defendants claim, pointed out
the eastern boundary of his land at or west of the line
claimed by the plaintiff to be the western line of
"Wolf Den," any possession he may then have had was
not such actual, continued, hostile, and distinct posses-
sion of the land in dispute as would constitute an ad-
verse possession under the Statute of Limitations.

Answer—refused.

(Tenth assignment of error.)

*Fourth.* If the jury believe, from the evidence, that
Ryly Morris entered upon the land before the expiration
of twenty-one years, declaring that he was authorized by
Thomas Hughes, the plaintiff, to seed the land in dispute,
and challenged the right of defendants to seed said lands,

[Hughes *v.* Smith *et al.*]

then it was such an entry by the plaintiff as would toll the running of the Statute of Limitations.

Answer—refused.

(Eleventh assignment of error.)

January 17, 1883, verdict for defendants, upon which judgment was afterwards entered. Plaintiff then took out a writ of error, and assigned the eleven errors set out above.

*A. A. Purman* for plaintiff in error.

Parol evidence is never received to contradict the writing or deed unless when fraud, accident, or mistake is alleged and proved: Gump's Appeal, 15 P. F. Sm., 478; Lodge *v.* Barnett, 10 Wr., 483. The parol evidence admitted by the court was for the purpose of creating an estate in the land in dispute in James Hughes: Morris *v.* Stephens, 10 Wr., 200; Earnest's Appeal, 15 W. N. C., 19.

The evidence admitted under the second assignment does not even tend to show where the line in dispute was actually located: Dawson *v.* Mills, 8 Casey, 302; 1 Greenleaf on Ev., sec. 2, 52.

The witness, Abraham Staggers, being the grantor, and James Hughes, the alleged real purchaser, being dead, he is incompetent to prove any matter occurring in the lifetime of James Hughes.

It was competent for the plaintiff to show where the owners of adjoining tracts declared their lines and corners were, when that proved or tended to prove the location of the corner or line in dispute: 1 Greenleaf on Ev., sec. 145, notes: Nieman *v.* Ward, 1 W. & S., 68; McCausland *v.* Fleming, 13 P. F. Sm., 36; Kennedy *v.* Lubold, 7 Norris, 246; Potts *v.* Everhart, 2 Casey, 496. The lines marked on the land are to govern: Blasdell *v.* Bissell, 6 Barr, 259; Lodge *v.* Barnett, 10 Wr., 477, and it is for the jury to determine, under the evidence, which of the alleged lines is the true boundary line: Oil Co. *v.* Lewis, 12 P. F. Sm., 390; Nourse *v.* Lloyd, 1 Barr, 233; Brown *v.* Willey, 6 Wr., 208; Hawk *v.* Senseman, 6 S. & R., 21; Tyler on Ejectment, 860, 870, 833; Calhoun *v.* Cook, 9 Barr, 226; Breidegam *v.* Hoffmaster, 11 P. F. Sm., 223.

The entry upon the land in dispute as set out in the point is sufficient to avoid the operation of the Statute of Limitations: Hood *v.* Hood, 1 Casey, 417; Ingersoll *v.* Lewis, 1 Jones, 219; Altemas *v.* Campbell, 9 Watts, 28; Hinman *v.* Cranmer, 9 Barr, 40; Hole *v.* Rittenhouse, 7 Harris, 309; act 13th April, 1859, P. L., 603, sec. 1; McGinniss *v.* Sawyer, 13 P. F. Sm., 267.

[Hughes *v.* Smith *et al.*]

*Wyly, Buchanan & Walton* for defendants in error.

The offer did not propose to contradict the written agreement. It was not to prove that Thomas Hughes was not a party to it, and not bound by its covenants, but merely to show something outside and beyond the written agreement: Hubbert *v.* Borden, 6 Wh., 92. Nor is this an attempt to enforce a parol contract in relation to lands against an unwilling party. It was surely competent to show an admission by a former owner that the line which defendants claimed was the true line. Exception was not taken to the evidence of Abraham Staggers at the trial.

The evidence offered under the fourth and fifth assignments of error was irrelevant, and it was also inadmissible, because of the interest of the party making the declarations : Kennedy *v.* Lubold, 7 Norris, 246 ; 1 Wharton on Evidence, sec. 191. The declarations of a witness living and present at the trial are not admissible : Buchanan *v.* Moore, 10 S. & R., 275 ; Greenleaf on Ev., sec. 145.

If the marks on the ground have disappeared, the next best evidence of their location is the evidence of living witnesses who have seen them and can testify to their location : Hall *v.* Tanner, 4 Barr, 247 ; Mageehan *v.* Adams, 2 Binney, 109 ; 2 Barr, 44, 4 S. & R., 464 ; Lodge *v.* Barnett, 10 Wr., 484. The point for charge does not limit the declaration to a period before the Statute of Limitations had completed the title. The fourth point is too broad and does not assert the truth of Morris' declaration.

October 27, 1884, the opinion of the Court was delivered by GREEN, J.:

*First assignment.*—The defendants' offer to prove that James Hughes was the real owner of the lands articled to be sold by Mrs. Cooke to Thomas Hughes was not an offer to alter or contradict the written articles. Nor was it an offer to set up a parol title to land against the owner of the paper title resisted by the latter. On the contrary, the proposition was to prove that, notwithstanding the written agreement was made with Thomas Hughes as the grantee nominally, by an outside and independent agreement between Thomas Hughes and his father, James Hughes, the former was named as purchaser, for a certain special purpose which James Hughes desired to subserve. This did not alter the relation existing under the articles between Mrs. Cooke and Thomas Hughes. And as the evidence was followed by proof that Thomas Hughes subsequently recognized the title of James

Hughes by allowing him to take possession of the land and treat it as his own, and by purchasing it himself from parties to whom James Hughes sold it, it cannot be said that the evidence offered and admitted was in antagonism with the title of Thomas under the articles with Mrs. Cooke. Of course, if James Hughes was the real owner, his declarations and acts against his interest during the continuance of his title were competent evidence in this suit, and there was no error in admitting them.

*Second assignment.*—Undoubtedly the offer of evidence covered by this assignment was competent and was properly allowed. Whether the testimony given in under the offer accomplished its purpose was matter for the jury. If it absolutely threw no light whatever upon the controversy, it should have been stricken out on motion, but if it tended, of itself or in connection with other evidence, to illustrate the true location of the disputed line in any degree, its efficacy for that purpose was a question solely for the jury. We can only deal with the offer, and we cannot say either that the offer was incompetent or that the testimony given did not tend in some degree to sustain the offer. Smith, the surveyor, having seen the deed from the administrators of Morris to Rinehart, and having been on the ground and run some of the lines, expressly testified that the deed did not embrace the land in dispute, and gave his reasons for his opinion. The sufficiency of those reasons was for the jury and not for the Court.

*Third assignment.*—The printed appendix does not show that any objection was made to the competency of Abraham Staggers, or any exception taken, when he was sworn. The counsel for the defendants says that the objection was not made at the trial that the witness was incompetent on account of the death of James Hughes, and in the absence of a bill of exceptions showing it, we cannot assume it.

*Fourth and fifth assignments.*—We do not see how the fact that James Hughes, as owner of "John's Bottom," and Flenniken, as part owner of "White Thorn," agreed, by way of compromise of a dispute between them, that the White Oak should be regarded as the north-east corner of "White Thorn" and the north-west corner of "John's Bottom," could disprove or tend to disprove the fact that the White Oak was the patent corner of "Wolf Den," and therefore think it was an irrelevant fact. In so far as the declarations of James Hughes, offered by the plaintiff, were merely declarations in favor of his

own title, they were certainly incompetent. Had he been entirely disinterested and enjoyed special means of knowing the location of the lines and corners of the tracts in question, his declarations, made long ago, might have been admissible as reputation, but not otherwise : 1 Green Ev., § 145 ; 1 Whart. on the Law of Evidence, § 191.

*Sixth assignment.*—As the witness Bayard, whose declarations were offered and rejected under this assignment, was alive and present in court, and examined as a witness at the trial, it certainly was not competent to give his declarations in evidence. They would be secondary evidence in any point of view, when the primary was immediately available.

*Seventh assignment.* It is not explained how the extent of the Philip Friend land on the north line of John's Bottom would show the bearing of John's Bottom from the poplar, or in what manner it could assist in locating the White Oak corner of Wolf Den, and hence we cannot see the error of the exclusion of the testimony offered.

*Eighth and ninth assignments.*—The plaintiff's points covered by these assignments, as we understand them, substitute the patent courses and distances as the next best evidence of location after the original marks on the ground are gone. They ignore all other proof of the original marks than the marks themselves, but it is at once apparent that if there is evidence of living witnesses who saw the marks before their destruction, or if there are other conditions on the ground which are entirely inconsistent with the correctness of the courses and distances mentioned in the patent, such evidence is of superior weight, and will prevail over the patent courses and distances. Thus, in Lodge *v.* Barnett, 10 Wr., 484, Mr. Justice Agnew said : "The courses and distances in a deed always give way to the boundaries found upon the ground or supplied by proof of their former existence, when the marks or monuments are gone. So the return of a survey, even though official, must give way to the location on the ground, while the patent, the final grant of the State, may be corrected by the return of same, and if it also differs, both may be rectified by the work on the ground." Of course, the best proof of the work on the ground is found in the original marks and monuments if still existing, but if not, proof of their former existence must be next best in order. There was much testimony of this character given by the defendants, and we do not think it would be proper to cast it all out by

the application of a rule which is quite secondary and inferior in its character.

*Tenth assignment.*—The plaintiff's third point does not propound the act of James Staggers in pointing out the eastern boundary of his land as having occurred while the Statute of Limitations was running, and it therefore lacks a vital element of abstract truth as a legal proposition, which would make its naked affirmance improper. The only evidence we can find in the case to which this point could apply is that of Aaron Morris and John Morris, and that testimony falls far short of proving disclaimer of any land in dispute as outside of James Staggers' boundaries.

*Eleventh assignment.*—The plaintiff's fourth point required the Court to say that the entry of Ryly Morris, a stranger, upon his mere declaration that he was authorized by Thomas Hughes, without averring the truth of the declaration, would toll the statute. Certainly this cannot be, as it would follow that the statute might be tolled in this mode without any entry by Thomas Hughes or by one who was really his authorized agent.

<div align="right">Judgment affirmed.</div>